UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

– against –

WASHINGTON PAREDES,

Defendant.

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ MAY 0 6 2016 ★
BROOKLYN OFFICE

MEMORANDUM AND
STATEMENT OF REASONS
FOR SENTENCE

15-CR-436 (JBW)

**Appearances**

    For United States:

        Robert L. Capers
        United States Attorney, EDNY
        By: Mark E. Bini

    For Defendant:

        Len H. Kamdang
        Federal Defenders of New York

JACK B. WEINSTEIN, Senior United States District Judge:

**Table of Contents**

I. Introduction ............................................................................................................. 2
II. Facts ........................................................................................................................ 4
   A. Offense Conduct ................................................................................................ 4
   B. New York State DWAI ...................................................................................... 5
II. Procedural History ................................................................................................... 5
III. Law ......................................................................................................................... 6
   A. Guidelines Provisions ........................................................................................ 6
   B. Second Circuit Precedent .................................................................................. 7
   C. New York DWAI Law ...................................................................................... 11

1

|     | D. Amendment to Application Note 5 | 13 |
| --- | --- | --- |
| III. | Discussion | 14 |
|     | A. Criminal History Score | 14 |
|     | B. Guidelines Range | 16 |
|     | C. 18 U.S.C. § 3553(a) Considerations | 16 |
| IV. | Consistency in Sentencing | 19 |
| V.  | Sentence | 19 |
| VI. | Conclusion | 20 |

I.   Introduction

The question posed is whether defendant's prior plea to a New York State "infraction" for Driving While Ability Impaired ("DWAI") compels the imposition of a ten-year mandatory minimum sentence for conspiring to distribute drugs. *See* New York Vehicle & Traffic Law ("N.Y. Veh. & Traf. Law") §§ 1192(1), 1193(1)(a); 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii)(II), 846.

According to the federal Sentencing Guidelines, the New York DWAI infraction increases defendant's criminal history score. *See* U.S. Sentencing Guidelines ("U.S.S.G.") §4A1.2(c); Appl. Note 5 to U.S.S.G. §4A1.2 ("Appl. Note 5"). This increase would disqualify him from receiving "safety valve" relief. *See* 18 U.S.C. § 3553(f)(1); U.S.S.G. §5C1.2(a)(1). Without the safety valve, defendant would have to be sentenced to the federal statutory ten-year mandatory minimum.

The long term of imprisonment required by the view of the United States Sentencing Commission ("Commission") is so inconsistent with Court of Appeals for the Second Circuit precedent, New York law, and common sense as to require rejection of the Commission's position. Eight months time served rather than ten years of imprisonment is therefore imposed on defendant.

2

As detailed below, in a case with nearly identical facts to the present one, the Court of Appeals for the Second Circuit decided that a New York DWAI infraction should be left out of a criminal history score if specified criteria are met – as they are here. *See United States v. Potes-Castillo*, 638 F.3d 106, 113 (2d Cir. 2011) (remanding to district court to determine if DWAI infraction is similar to misdemeanor conviction for reckless driving, which does not factor into criminal history); *United States v. Gonzalez-Rivera*, No. 05-CR-402, 2011 WL 4916395, at *5 (S.D.N.Y. Oct. 17, 2011) (finding on remand that "a DWAI offense cannot be said to be 'categorically more serious' than a reckless driving offense.").

New York law defines a DWAI infraction as a civil violation, not a criminal conviction. *See* N.Y. Veh. & Traf. Law § 1193(1)(a); *id.* § 155. It requires less alcohol in the blood than the crime of Driving While Intoxicated ("DWI"). *Compare id.* § 1192(1) *with id.* §§ 1192(2), 1192(3). The violation need not involve "driving." *See People v. O'Connor*, 607 N.Y.S.2d 856, 857-58 (Dist. Ct. Nassau Cty. 1994) (collecting cases).

Were we to accept the view of the Commission, if a person were to have a few drinks, sit in the passenger seat of a car to sleep it off – for which he could not be convicted of DWAI – and later be charged with the instant offense, the court could impose no time in prison. But if that person slid over to the driver's seat to sleep and was convicted of DWAI (as he could be under New York law), this court would have to impose a mandatory sentence of ten years. That scenario is implausible in the real world of people and law.

The Commission tried to overturn the precedent set by the Court of Appeals for the Second Circuit with an amendment to its Guidelines Commentary. As amended, the Commentary states that "[c]onvictions for driving while intoxicated or under the influence . . . are *always counted*" toward a defendant's criminal history score. Appl. Note 5 (emphasis

3

added). Since the Commentary would lead to an absurd result, the court refuses to follow it. "[Guidelines] commentary is not 'binding in all instances.'" *Potes-Castillo*, 638 F.3d at 111 (quoting *Stinson v. United States*, 508 U.S. 36, 43 (1993)). As Cardozo put it in *Matter of Rouss*, 221 N.Y. 81, 91 (1917), "[s]tatutes must be so construed, if possible, that absurdity and mischief may be avoided."

## II. Facts

### A. Offense Conduct

On August 14, 2015, United States Customs and Border Protection officers informed Homeland Security Investigation ("HSI") agents that they had found narcotics concealed in six mail packages arriving on a flight from Guayaquil, Ecuador to John F. Kennedy Airport ("JFK"). The packages were to be held in the care of Reynoso and Gallegos Courier Service in Queens, New York. Presentence Investigation Report ("PSR") ¶ 3. HSI agents removed the narcotics from the packages and replaced them with a benign substance. They also installed trip wire and mobile tracking devices inside the packages. *Id.* ¶ 4.

The next day, Paredes, who was a driver for Reynoso and Gallego Courier Service, retrieved the packages from the JFK cargo facility. Using the monitoring devices, HSI agents learned that defendant made several stops in Queens before returning to the courier office. The agents then met with the owner of the courier service, who gave the agents the six packages defendant had dropped off. The packages looked just like those made ready for pick-up at JFK. But, when opened, the agents discovered that the tracking devices had been removed. *Id.* ¶ 5.

Four days later, agents were informed that Paredes was scheduled to fly to Ecuador. He was arrested at the airport. *Id.* ¶ 6. Paredes remained in federal custody at the Metropolitan Detention Center for eight months until he was sentenced. *Id.* ¶ 49.

4

### B. New York State DWAI

Two years ago, defendant pled guilty to having committed a DWAI infraction in violation of section 1192(1) of the New York Vehicle and Traffic Law. *See* N.Y. Veh. & Traf. Law § 1192(1); PSR ¶ 26. The State court imposed a sentence of conditional discharge for one year; participation in an alcohol abuse program; a $300 fine; and license suspension for 90 days. Paredes completed a seven-week alcohol abuse program and paid the fine. PSR ¶¶ 26, 46. He was arrested for the instant drug offense during the period of conditional discharge. *Id.* ¶ 27.

## II. Procedural History

Paredes was charged with Conspiracy to Possess Cocaine With Intent to Distribute (Count I) and Conspiracy to Possess Heroin With Intent to Distribute (Count II, later dismissed), in violation of sections 841(a)(1), 841(b)(1)(A)(ii)(II), 841(b)(1)(B)(i), and 846 of Title 21. *See* Indictment, ECF No. 7. The statute provides a ten-year mandatory minimum sentence for Count I, subject to a safety valve. *See* 21 U.S.C. § 841(b)(1)(A)(ii)(II) ("such person shall be sentenced to a term of imprisonment which may not be less than 10 years"); 18 U.S.C. § 3553(f) (providing relief from the mandatory ten-year sentence for defendants who: (1) do not have more than one criminal history point; (2) did not use violence in connection with the offense; (3) the offense did not result in death or serious bodily injury; (4) the defendant was not an organizer or leader and did not engage in a continuing criminal enterprise; and (5) the defendant has truthfully proffered all information concerning the offense to the government); U.S.S.G. §5C1.2(a).

Paredes pled guilty to Count I pursuant to an agreement with the government. Plea Hr'g Tr. of Nov. 17, 2015, ECF No. 16, at 42:24-43:4; PSR ¶ 1. At the time, the parties believed that Paredes's DWAI infraction should be given no weight in his criminal history. Def.'s Sentencing Mem., ECF No. 21, at 1. There was no dispute that Paredes had satisfied all five requirements

for safety valve relief, including proffering truthfully with the government. Plea Hr'g Tr. of Nov. 17, 2015 at 24:1-20. Thus, he would not face a ten-year mandatory minimum. Def.'s Sentencing Mem. at 1.

In the Presentence Investigation Report, however, following the Commission's view, Probation gave Paredes a criminal history point for his non-criminal DWAI violation. PSR ¶ 27. With that criminal history, Paredes could not receive safety valve relief by statute. *See* 18 U.S.C. § 3553(f)(1). Under this court's analysis, he would have no criminal history and the safety valve would take effect. Paredes was accordingly sentenced to time served of eight months. *See* Order of Apr. 13, 2016, ECF No. 25.

### III. Law

#### A. Guidelines Provisions

Section 4A1.2 of the Guidelines lists factors sentencing courts should use to determine whether to factor a prior sentence into a defendant's criminal history. Subsection (c) of the provision states:

> Sentences for all felony offenses are counted. Sentences for misdemeanor and petty offenses are counted, except as follows:
>
> (1) Sentences for the following prior offenses and offenses similar to them, by whatever name they are known, are counted only if (A) the sentence was a term of probation of more than one year or a term of imprisonment of at least thirty days, or (B) the prior offense was similar to an instant offense:
>
> > Careless or reckless driving
> > Contempt of court
> > Disorderly conduct or disturbing the peace
> > Driving without a license or with a revoked or suspended license
> > False information to a police officer
> > Gambling
> > Hindering or failure to obey a police officer
> > Insufficient funds check

6

> Leaving the scene of an accident
> Non-support
> Prostitution
> Resisting arrest
> Trespassing.

> (2) Sentences for the following prior offenses and offenses similar to them, by whatever name they are known, are never counted:

>> Fish and game violations
>> Hitchhiking
>> Juvenile status offenses and truancy
>> Local ordinance violations (except those violations that are also violations under state criminal law)
>> Loitering
>> Minor traffic infractions (e.g., speeding)
>> Public intoxication
>> Vagrancy.

U.S.S.G. §4A1.2(c).

### B.   Second Circuit Precedent

In a case of first impression, the Court of Appeals for the Second Circuit analyzed the above Guidelines provision in a case almost identical to the present one. *See Potes-Castillo*, 638 F.3d at 109-10. Walter Gonzalez-Rivera, a defendant in *Potes-Castillo*, was convicted by a jury of conspiracy to distribute a controlled substance. *Id.* at 108. He had a DWAI infraction; the punishment imposed for that violation was a one-year term of conditional discharge; treatment for alcohol abuse; a $500 fine; and suspension of his driver's license for 90 days. *Gonzalez-Rivera*, 2011 WL 4916395, at *4. The Court of Appeals for the Second Circuit concluded that "Gonzalez-Rivera's prior sentence for violating New York's driving while ability impaired law should not be counted toward his criminal history calculation if it is similar to an offense listed in United States Sentencing Guidelines section 4A1.2(c)(1)," and remanded the case to the district

court to determine whether the DWAI conviction was similar to reckless driving. *Potes-Castillo*, 638 F.3d at 107.

In explaining the text and structure of section 4A1.2(c) of the Guidelines, the Court of Appeals for the Second Circuit stated:

> The section addresses which sentences "are counted" by classifying all prior convictions into three groups based on the nature of the crime of conviction for which the sentence was imposed: (1) sentences that "are counted," U.S.S.G. § 4A1.2(c); (2) those that "are counted" subject to possible exception, *id.* § 4A1.2(c)(1); and (3) those that are "never counted," *id.* § 4A1.2(c)(2).
>
> The first group of sentences – those always counted – includes all felonies. Regardless of the nature of the conduct underlying the felony, it is counted – and felonies are the only class of sentences always counted under this section. *Id.* § 4A1.2(c) ("Sentences for all felony offenses are counted.").
>
> The second group of sentences – those counted unless an exception applies – includes all misdemeanor and petty offenses. Sentences for the offenses listed in section 4A1.2(c)(1) "and offenses similar to them, by whatever name they are known," are counted "only if (A) the sentence was a term of probation of more than one year or a term of imprisonment of at least thirty days, or (B) the prior offense was similar to" an offense for which the defendant is now being sentenced. *Id.* § 4A1.2(c)(1). Thus, misdemeanor and petty offenses of the type listed in section 4A1.2(c)(1) are excluded provided, among other things, that the sentences imposed were not too severe. The list of offenses that are not counted unless one of the specified conditions applies includes "[c]areless or reckless driving." *Id.*
>
> The third group of sentences – those never counted – includes a list of specified minor offenses. Sentences for the offenses listed in section 4A1.2(c)(2) "and offenses similar to them, by whatever name they are known," are "never counted." *Id.* § 4A1.2(c)(2). Thus, unlike the offenses listed in section 4A1.2(c)(1), sentences for offenses listed in section 4A1.2(c)(2) are not counted, regardless of the severity of the sentence imposed for such a conviction and regardless of any similarity between the listed offense and the offense for which the defendant is being sentenced. The list of

> offenses that are never counted includes "[m]inor traffic infractions (*e.g.*, speeding)." *Id.*

*Id.* at 109-10.

At sentencing, Gonzalez-Rivera had argued that the DWAI infraction – his only prior violation – should not be counted toward his criminal history score because DWAI is similar to reckless driving, one of the offenses listed under section 4A1.2(c)(1). *Id.* at 108. The government argued that Application Note 5 to section 4A1.2 required the DWAI sentence to be counted. *Id.* At the time Gonzalez-Rivera's appeal was decided, Application Note 5 read as follows:

> 5. <u>Sentences for Driving While Intoxicated or Under the Influence</u>. – Convictions for driving while intoxicated or under the influence (and similar offenses by whatever name they are known) are counted. Such offenses are not minor traffic infractions within the meaning of §4A1.2(c).

*Id.* at 110.

The Court of Appeals for the Second Circuit concluded that the then-Application Note 5 was "ambiguous." *Id.* It rejected the government's interpretation of the Note, that "[c]onvictions for driving while intoxicated or under the influence . . . are counted [without exception]." *Id.* at 111 (internal quotation marks omitted; alterations in original). It agreed with defendant's reading that "[c]onvictions for driving while intoxicated or under the influence . . . are counted [unless an exception applies]." *Id.* (internal quotation marks omitted; alterations in original); *see also id.* ("The essential difference between these two views is that the government wants driving while impaired convictions treated like felonies (counted without exception) and Gonzalez-Rivera wants such convictions treated like all other misdemeanors and petty offenses (counted unless an exception applies). We cannot accept the government's interpretation.").

9

The Court of Appeals for the Second Circuit decided that the DWAI infraction, like other minor sentences, should be factored into a criminal history score only if: (1) it is deemed "similar" to an offense listed under section 4A1.2(c)(1); and (2) it satisfies either of the following factors – "(A) the sentence was a term of probation of more than one year or a term of imprisonment of at least thirty days, or (B) the prior offense was similar to an instant offense." *Id.* at 112; U.S.S.G. §4A1.2(c)(1).

The case was remanded to the district court with the following direction:

> We do note that Gonzalez-Rivera's sentence on the driving while ability impaired conviction was not more than one year of probation or imprisonment for at least thirty days, and his prior offense is not similar to his drug distribution conspiracy convictions. Thus, neither condition (A) nor (B) of section 4A1.2(c)(1) applies, and *the issue for the District Court to decide on remand is whether Gonzalez-Rivera's conviction is "similar to" a conviction for "careless or reckless driving."*

*Potes-Castillo*, 638 F.3d at 113 (emphasis added).

The district court was further instructed as follows:

> In applying section 4A1.2(c)(1), the District Court's goal will be to determine whether Gonzalez–Rivera's DWAI offense "is categorically more serious than," *United States v. DeJesus-Concepcion*, 607 F.3d 303, 304 (2d Cir. 2010) (per curiam) (internal quotation marks omitted), careless or reckless driving. "A district court may consider multiple factors in making its determination, including: [1] a comparison of punishments imposed for the listed and unlisted offenses, [2] the perceived seriousness of the offense as indicated by the level of punishment, [3] the elements of the offense, [4] the level of culpability involved, and [5] the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct." *Id.* at 305 (alterations in original) (internal quotation marks omitted); *see also* U.S.S.G. § 4A1.2 cmt. n. 12(A). *"It may also consider any other relevant factor, including the actual conduct involved and the actual penalty imposed."* *DeJesus-Concepcion*, 607 F.3d at 305 (internal quotation marks omitted).

*Id.* at 113-14 (emphasis added). (Whether the emphasized sentence is compatible with general categorical analysis is not an issue in the present case. *See, e.g., United States v. Moncrieffe*, --

F. Supp. 3d --, 2016 WL 913391 (E.D.N.Y. Mar. 10, 2016) (categorical analysis defined, collecting cases).)

In applying the five factors, along with "(6) the actual conduct involved, and (7) the actual penalty imposed," the district court found that "a DWAI offense cannot be said to be 'categorically more serious' than a reckless driving offense. Accordingly, Defendant's DWAI offense is excluded from Defendant's criminal history calculation, pursuant to section 4A1.2(c)(1)." *Gonzalez-Rivera*, 2011 WL 4916395, at *1, *5. The district court determined that defendant was eligible for the safety valve and sentenced him to time served. Hr'g Tr. of Oct. 24, 2012, *Gonzalez-Rivera*, No. 05-CR-402, ECF No. 208, at 8:8-10, 11:20-22.

### C. New York DWAI Law

The New York DWAI law provides that "[n]o person shall operate a motor vehicle while the person's ability to operate such motor vehicle is impaired by the consumption of alcohol." N.Y. Veh. & Traf. Law § 1192(1).

New York law defines a DWAI offense as a violation of civil vehicular law, not of the criminal code. *See* N.Y. Veh. & Traf. Law § 1193(1) ("A violation of [section 1192(1)] shall be a traffic infraction."); *id.* § 155 ("A traffic infraction is not a crime and the punishment imposed therefor shall not be deemed for any purpose a penal or criminal punishment."). At resentencing, the district court in *Gonzalez-Rivera* found this point "most significant[]." *See Gonzalez-Rivera*, 2011 WL 4916395, at *5 ("[A] DWAI offense is a 'traffic infraction,' and is *not* a crime." (emphasis in original)). Federal and New York State courts have frequently recognized this distinction. *See, e.g., Glasgow v. Beary*, 2 F. Supp. 3d 419, 423 (E.D.N.Y. 2014); *Beck v. City of New York*, No. 12-CV-9231, 2014 WL 80544, at *4 (S.D.N.Y. Jan. 3, 2014) ("New York Vehicle and Traffic Law makes clear that traffic infractions are civil violations."); *County of*

*Nassau v. Wildermuth*, 747 N.Y.S.2d 24, 25 (2d Dep't 2002) ("Vehicle and Traffic Law § 155 provides that traffic infractions are not crimes."); *see also People v. Kapsuris*, 392 N.Y.S.2d 785, 786 (County Ct., Erie Cty. 1976) ("Section 1192(1), defining driving while ability impaired, defines a violation and not a crime; Section 1192(3), defining driving while intoxicated, defines a crime. . . . [T]here is a clear line between impaired and intoxicated.").

To commit a DWAI infraction in New York, a person need not be intoxicated; proof that his "ability was impaired to any extent" is sufficient. *People v. Lizzio*, 577 N.Y.S.2d 178, 179 (3d Dep't 1991); *see also People v. Cruz*, 423 N.Y.S.2d 625, 628 (1979). To be convicted of a DWI, by contrast, it must be proven that the defendant had a blood alcohol level of at least 0.08% or was impaired to a "substantial degree." *See* N.Y. Veh. & Traf. L. § 1192(2) (DWI per se requires ".08 of one per centum or more by weight of alcohol in the person's blood as shown by chemical analysis"); *id.* § 1192(3) (common law DWI); *People v. Miller*, 373 N.Y.S.2d 312, 314 (Webster Town Ct., Monroe Cty. 1975) ("[T]his court finds that it was the intention of the Legislature that a person be convicted of driving while intoxicated [in violation of section 1192(3)] when . . . his judgment and ability to operate a motor vehicle are adversely affected to a substantial degree."); *see also People v. Stack*, 527 N.Y.S.2d 569, 570-71 (DWAI only requires impairment "to any extent," and "in contrast, intoxication is a greater degree of impairment, reached when a driver has voluntarily consumed alcohol to the extent that he or she is incapable of employing . . . physical and mental abilities." (internal quotation marks and citation omitted)).

An individual may commit a DWAI violation without actually driving or causing a vehicle to move. New York courts have determined that "the definition of 'operation' for purposes of VTL § 1192 is broader than the ordinary definition of driving. It includes the act of '[using] the mechanism of the automobile for the purpose of putting the automobile in motion

even though [the vehicle does not move.]'" *O'Connor*, 607 N.Y.S.2d at 858 (citations omitted; alterations in original). If a person's ability to operate a vehicle is impaired to any degree, he may be found to be in violation of the law simply by getting behind the wheel. *See People v. Marriott*, 325 N.Y.S.2d 177, 178 (3d Dep't 1971) ("The trial court correctly charged the jury that a person operates a motor vehicle when he begins to use the mechanism of the automobile for the purpose of putting the automobile in motion even though he does not move it."); *People v. Domagala*, 206 N.Y.S. 288, 288 (Dist. Ct., Nassau Cty. 1924) ("[T]wo police officers found the respondent, in an intoxicated condition, in his automobile, which was parked directly across the street, with the front wheels squarely against the curb. . . . The fact that the motor was not powerful enough to [move the car] is no defense.").

### D. Amendment to Application Note 5

The Sentencing Commission issued an amendment to Application Note 5, effective November 1, 2012. The amended Note declares:

> 5. <u>Sentences for Driving While Intoxicated or Under the Influence</u>.
> – *Convictions* for driving while intoxicated or *under the influence* (and similar offenses *by whatever name they are known*) are *always counted, without regard to how the offense is classified*. Paragraphs (1) and (2) of §4A1.2(c) do not apply.

Appl. Note 5 (emphasis added). Citing the decision of the Court of Appeals for the Second Circuit in *Potes-Castillo*, the Commission stated that it had issued the amendment in effect to overrule the Second Circuit's opinion:

> This amendment resolves the issue by amending Application Note 5 to clarify that *convictions for driving while intoxicated and similar offenses are always counted, without regard to how the offenses are classified*. Further, the amendment states plainly that paragraphs (1) and (2) of §4A1.2(c) do not apply.
>
> This amendment reflects the *Commission's view that convictions for driving while intoxicated and other similar offenses are sufficiently*

13

> *serious to always count toward a defendant's criminal history score.*
> The amendment clarifies the Commission's intent and should result
> in more consistent calculation of criminal history scores among the
> circuits.

U.S.S.G. Supplement to App'x C, Amendment 766, 16-17 (emphasis added); *see also* Gov't's Sentencing Mem., ECF No. 24, at 4. The Commission apparently did not consider that the amended Note would encompass New York's "ability impaired" provision, which is a light, non-criminal offense with *mens rea* squeezed out of it, as interpreted by New York courts. *See supra*, Part II.C.

### III. Discussion

#### A. Criminal History Score

Paredes's DWAI violation does not increase his criminal history. He is therefore eligible for safety valve relief from the ten-year mandatory minimum.

The Court of Appeals for the Second Circuit has effectively decided this issue. The Commission's amendment to Application Note 5, designed to minimize the sentencing courts' discretion, is not binding in the instant case. *Cf. United States v. Pruitt*, 813 F.3d 90, 94 n.8 (2d Cir. 2016) (after *Booker* deemed the Guidelines merely advisory, Commission "designed" Statement of Reasons form to press judges to sentence within Guidelines ranges); *United States v. Dorvee*, 616 F.3d 174, 185 (2d Cir. 2010) ("The Commission has often openly opposed . . . Congressionally directed changes [regarding sentencing].").

Amended Application Note 5 does not apply for the following reasons:

First, the Note applies to "convictions" for driving while intoxicated. *See* Appl. Note 5 ("*Convictions* for driving while intoxicated or under the influence . . . are always counted.") (emphasis added). Paredes's DWAI offense did not result in a criminal conviction, but rather, in an "infraction" of a non-criminal traffic law provision. N.Y. Veh. & Traf. Law § 1193(1); *id.*

§ 155. As defendant's counsel informed the court, individuals charged with DWAI infractions are routinely advised on the basis of New York law that pleading guilty will not lead to a conviction on their record. *See* Sentencing Hr'g Tr. of Apr. 13, 2016 at 13:5-10 ("[C]lients are advised that [a DWAI infraction] is not a criminal conviction. So this would seem to create a serious due process concern if courts were to start considering these violations when Mr. Paredes was specifically advised that this was not a criminal conviction."). Because defendant was not convicted of any crime, and was probably so advised during his guilty plea, the DWAI infraction does not increase his criminal history under the Guidelines.

Second, in New York, a person may commit a DWAI offense even if there was no driving involved. *See supra* Part II.C. Application Note 5, however, only applies to "[c]onvictions for *driving*." *See* Appl. Note 5 (emphasis added). Because Paredes's DWAI infraction is not necessarily a "driving" offense, the Note does not apply.

DWAI is not categorically more serious than the offenses listed under section 4A1.2(c)(1), including reckless driving. *See Gonzalez-Rivera*, 2011 WL 4916395, at *5; *see id.* at *2-*4 (considering factors). Paredes's actual conduct and actual penalty do not alter that determination. Unlike Gonzalez-Rivera, Paredes did not drive through a red light. *See id.* at *5. Paredes also received a lesser punishment since his fine was $300 compared to the $500 imposed upon the comparable defendant. *See id.* at *4.

Defendant's DWAI violation may not be counted toward his criminal history. Because Paredes has satisfied all five requirements for safety valve relief, he is not subject to the mandatory statutory ten-year sentence.

### B. Guidelines Range

The base offense level for a violation of section 846 of Title 21 is 31. *See* U.S.S.G. §2D1.1(a)(5) (base offense level is 34 for offenses involving 2.8 to 8.4 kilograms of cocaine); *id.* §3B1.2 (base offense level is reduced by 3 levels for defendants who are between a minimal and minor participant in any criminal activity); PSR ¶ 15. Defendant meets the criteria for safety valve relief, so he receives a 2-level reduction. *See* U.S.S.G. §§2D1.1(b)(17), 5C1.2. Paredes "had no involvement in any other aspects of the conspiracy and worked solely at the behest of others," qualifying him for a 2-level minor role adjustment. *See id.* §3B1.2(b); PSR ¶¶ 10, 18. Defendant has demonstrated acceptance of responsibility by pleading guilty, and the government was notified in a timely manner of his intent to plead, requiring his offense level to be decreased by 2 more levels. *See* U.S.S.G. §3E1.1; PSR ¶¶ 22-23. Paredes's total offense level is 24. With a criminal history score of I, his Guidelines imprisonment range is 51-63 months.

Under both the Guidelines and statute, a term of supervised release of at least five years must be imposed with any term of imprisonment for the instant offense. *See* U.S.S.G. §§5D1.1(a)(1), 5D1.2(a)(1), 5D1.2(c); 21 U.S.C. § 841(b)(1)(A)(ii)(II). But, neither party objects to a three-year term of supervised release, and, since defendant will be promptly deported, this waiver of the five-year required term is accepted as reasonable.

### C. 18 U.S.C. § 3553(a) Considerations

The court considered "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

Defendant was born on February 15, 1964 in Guayaquil, Equador. His parents separated when he was a toddler. PSR ¶ 33. Paredes's father was absent during his formative years, and he and his siblings were raised by their mother in Ecuador. He believes his father stayed away

from the family because he was unemployed and embarrassed about his financial situation. Paredes's mother has never worked outside the home. She raised her children with help from relatives. *Id.* ¶ 35. His 86-year-old father is now a retired messenger and lives alone in Queens. *Id.* ¶ 33. His mother, age 87, lives in Ecuador with relatives. She suffers from high blood pressure. Paredes has a loving relationship with both parents. They are aware of the instant offense and remain supportive. *Id.*

Defendant has two sisters and one brother. His sisters live in Queens, and his brother lives in Connecticut. His elder sister is deaf with impaired speech; she receives social security disability benefits. His other sister is married with two children; she works at a warehouse. Paredes's brother is also married with two children; he works as a mail carrier. Defendant maintains close ties to his siblings; one sister sent him $20 per month during his incarceration to cover the cost of telephone calls. *Id.* ¶ 34.

Paredes graduated from Colegio Ambato, a vocational school in Guayaquil, in 1979 at the age of 15. He was enrolled in an electrical repair program. He had completed secondary school in Ecuador. Defendant has no other formal education. *Id.* ¶ 47. He worked in factories in Ecuador as a teenager and completed compulsory military service in the Ecuadorian Army between ages 19 and 20. He participated in routine drills and was assigned to construction jobs on various public works projects during his time in the military. *Id.* ¶ 52.

In 1988, at the age of 24, Paredes immigrated to the United States in search of better economic opportunities. *Id.* ¶ 36. From 1988 to 1996, he worked as a laborer in a garment factory in New York and earned $260 per week "off the books." In 1996, defendant was employed as a mail sorter for two months, but he resigned because the company did not pay him on time. Paredes worked as a truck unloader at a cigarette distributor plant in Newark, New

Jersey between 1996 and 1997; he left that job because the commute was too long. From 1997 to 2006, Paredes was employed as a full-time messenger at various courier companies in Queens, where he earned between $250 and $400 per week "off the books." *Id.* ¶ 51. From 2006 until his arrest for the instant offense, he was a self-employed delivery driver and worked as an independent contractor at various courier companies in Queens. Paredes earned a combined gross monthly income of approximately $1300 doing this work. *Id.* ¶ 50.

Paredes met his first wife through mutual friends. They married in 1993 in Ecuador. The couple separated a year later after defendant's wife had an affair. The divorce was finalized in Ecuador in 1996. They have maintained an amicable relationship and jointly cared for their now 21-year-old daughter. Paredes has been financing his daughter's college education in Ecuador, but since his arrest, his ex-wife has had to assume this expense. Paredes's daughter is aware of the instant case and remains loving. *Id.* ¶ 37.

In 2007, defendant met his current wife. They married the following year. She works as an herbal product salesperson and continues to live in Ecuador. Despite Paredes's frequent trips to visit her, the marriage began falling apart in early 2015, apparently because she refused to move to New York. His wife remains supportive. The couple has an 8-year-old daughter who resides in Ecuador with her mother. Prior to his arrest, defendant supported his daughter financially. *Id.* ¶ 38.

Paredes is physically and mentally healthy. *Id.* ¶¶ 43-44. He has never used drugs. He began drinking alcohol at age 19, sharing beer with friends on the weekends. *Id.* ¶ 45.

Since his entry into the United States, defendant has resided in Queens, but he visits Ecuador several times a year. *Id.* ¶ 39. He is a Legal Permanent Resident. *Id.* ¶ 36. In 2012,

Paredes moved into a two-bedroom Queens apartment with his elder sister and their 87-year-old aunt. His aunt described him as a loving person. *Id.* ¶¶ 39-40.

Paredes is subject to removal proceedings because of the instant case. *Id.* ¶ 36. He probably will be promptly deported.

IV. **Consistency in Sentencing**

This court has attempted to rationalize its sentences by establishing general criteria for similar cases. With respect to cases in which the defendant is a noncitizen facing deportation following incarceration, this court has determined, "[c]onsidering the grave hardships deportation entails, the nation's present deportation policy, and the core purposes of criminal sentencing, *see* 18 U.S.C. § 3553, imposition of minimal prison time, with prompt deportation should be normal in such cases – subject to variations for individual circumstances." *United States v. Chin Chong*, No. 13-CR-570, 2014 WL 4773978, at *1 (E.D.N.Y. Sept. 24, 2014); *see also United States v. Aispuro*, No. 15-CR-00073, 2015 WL 7281641 (E.D.N.Y. Nov. 17, 2015) (accounting for prospect of deportation when imposing a term of incarceration); *accord United States v. Florez Parra*, No. 14-CR-332, 2015 WL 105885, at *2 (E.D.N.Y. Jan. 7, 2015); *United States v. Palaguachy*, No. 14-CR-0184, 2014 WL 6606668, at *2 (E.D.N.Y. Nov. 19, 2014); *United States v. Sarpong*, No. 14-CR-242, 2014 WL 5363775, at *2 (E.D.N.Y. Oct. 21, 2014).

V. **Sentence**

Under section 3553(a)(2)(B) of Title 18, a sentencing court must consider two major factors: general and specific deterrence. In light of the nature of the offense and the characteristics of the defendant, Paredes is sentenced to time served of eight months and three years of supervised release. A $100 special assessment is imposed. *See* 18 U.S.C. § 3013(a)(2)(A). No fine is levied because defendant has no assets. PSR ¶ 55.

General and specific deterrence are achieved by the sentence imposed. Defendant served approximately eight months in prison away from his family. He will be deported and suffer the collateral consequences of a felony conviction.

## VI. Conclusion

All relevant elements of the Sentencing Guidelines and statutes have been considered. Respectful consideration was given to the Commission's policy statements, and all other factors listed under section 3553(a) of Title 18, to ensure that the sentence is "sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a).

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: May 5, 2016
Brooklyn, New York